Paul J. Steiner (SBN 41117)
LAW OFFICES OF PAUL J. STEINER
580 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 981-6100 | Fax: (415) 984-0950
Email: paul@sfpaulaw.com

Frank F. Sommers (SBN 109012)
SOMMERS LAW PC
227 Princeton Avenue, Mill Valley, CA 94941
Tel: (415) 308-4004 | Email: ffs@sommerslawpc.com
Attorneys for Plaintiffs ESC-TOY LTD. and ERICK CHATEL

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ESC-TOY LTD., a Nevada corporation; ERICK CHATEL, an individual (p/k/a ERICK SCARECROW),<br><br>Plaintiffs,<br><br>v.<br><br>SONY INTERACTIVE ENTERTAINMENT LLC, a California limited liability company; NAUGHTY DOG, LLC, a California limited liability company; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:26-cv-07175-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date: December 10, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Ctrm: 15, 18th Floor<br><br>Complaint filed: July 13, 2026 |

## TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES ... 1

INTRODUCTION ... 1

STATEMENT OF ISSUES TO BE DECIDED ... 1

STATEMENT OF FACTS ... 2

LEGAL STANDARD ... 4

ARGUMENT ... 4

I. THE REQUEST FOR JUDICIAL NOTICE CANNOT BE USED TO CONTRADICT THE COMPLAINT ... 4

II. COUNT I IS NOT BARRED BY SECTION 411(a). ... 6

III. THE RUNNING OF THE COPYRIGHT LIMITATIONS PERIOD IS NOT APPARENT ON THE FACE OF THE COMPLAINT. ... 7

A. The Complaint pleads facts supporting delayed discovery. ... 7

B. Each distribution is a separately accruing act. ... 8

C. Equitable estoppel is pleaded and is fact-bound. ... 9

IV. THE COMPLAINT DOES NOT PLEAD A LICENSE THAT BARS THE FEDERAL CLAIMS. ... 9

A. No express license is pleaded. ... 9

B. The implied-license elements are not established on the face of the Complaint. 10

C. The same analysis defeats the trademark "license" argument. ... 11

V. THE LANHAM ACT CLAIMS ARE ADEQUATELY PLEADED. ... 11

A. Likelihood of confusion is pleaded with facts, not labels. ... 11

B. Nominative fair use cannot be resolved on the pleadings and fails on its own terms. ... 12

VI. LACHES CANNOT BE RESOLVED ON THE PLEADINGS. ... 12

VII. THE STATE-LAW CLAIMS SHOULD NOT BE DISMISSED. ... 13

A. Counts V–VII are not preempted. ... 13

B. Counts V–VII are adequately pleaded. ... 15

C. The state-law claims are not time-barred on the face of the Complaint. ... 16

VIII. THE DECLARATORY-RELIEF CLAIM STANDS. ... 18

IX. ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND. ... 19

CONCLUSION ... 19

## TABLE OF AUTHORITIES

**Cases**

*Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956 (N.D. Cal. 2024) .................................14
*April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805 (1983) .................................17
*Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013) .................................17
*ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999 (9th Cir. 2014) .................................4
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................4
*Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008) .................................10
*Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999) .................................14
*Certified Fire Prot. Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 283 P.3d 250 (2012) ..15
*Copeland v. Desert Inn Hotel & Casino*, 99 Nev. 823, 673 P.2d 490 (1983) .................................18
*Daniels v. Walt Disney Co.*, 958 F.3d 767 (9th Cir. 2020) .................................15
*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) .................................13
*Desny v. Wilder*, 46 Cal. 2d 715 (1956) .................................15
*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) .................................17
*Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) .................................14
*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) .................................10
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .................................19
*ESC-Toy Ltd. v. Sony Interactive Entm't LLC*, No. 3:21-cv-00778-EMC, Dkts. 1, 164, 546, 555-2 (N.D. Cal.) .................................2, 4, 5, 6, 8, 14, 15, 17
*Fausto v. Sanchez-Flores*, 137 Nev. 113, 482 P.3d 677 (2021) .................................18
*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010) .................................11
*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019) ..........6, 7
*Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112 (9th Cir. 2014) .............5
*Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004) .................................14, 15
*Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1 (2003) .................................17

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919 (1991) .....14

*Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) .......................................4

*Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228 (N.D. Cal. June 4, 2019) ..........................7

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ..................12

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).........................1, 5, 6

*Lang Van, Inc. v. VNG Corp.*, No. SACV 14-00100 AG (C.D. Cal. July 12, 2019) ...........7

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) ................................................19

*Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872 (5th Cir. 1997) .....................—

*Mathews v. Diaz*, 426 U.S. 67 (1976) .................................................................1, 7

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010)..................................................16

*Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019)...................7

*Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011) (en banc) .13, 14, 16

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ...............................................................5

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) .............12

*Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) ...................1

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) .....................................8, 13

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018) ..........12

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) .....................................................6

*Soper ex rel. Soper v. Means*, 111 Nev. 1403, 903 P.2d 222 (1995) ................................18

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236 (9th Cir. 2022) ..........................................................................................................7

*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999) .....................10

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) .....................12

*UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019).......7

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) ...4

*Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024) .............................................7

*Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) .9

**Statutes**

15 U.S.C. § 1125(a) ....................11

17 U.S.C. §§ 102, 106, 301(a), 411(a), 507(b) ....................1, 6

Nev. Rev. Stat. § 11.190(2)(c) ....................6, 16

**Rules and Other Authorities**

Fed. R. Civ. P. 8(d), 12(b)(6), 15(a)(1)(B), 15(d) ....................1, 6, 7, 19

N.D. Cal. Civil L.R. 7-3(a) ....................4

Restatement (Second) of Conflict of Laws § 142 ....................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants' motion rests on three moves, and none survives scrutiny. First, Defendants ask the Court to treat allegations from a different complaint in a different court — ESC-Toy's professional-negligence pleading against its former lawyers — as established fact that "contradicts" the Complaint here. The Ninth Circuit forbids exactly that use of judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018). Second, Defendants ask the Court to resolve, on the pleadings, a series of fact-bound affirmative defenses — implied license, accrual and discovery, laches, equitable estoppel, and the comparative weight of two States' limitations policies — by drawing every inference against Plaintiffs rather than for them. Third, Defendants ask for dismissal of Count I on a ground that no longer exists: the Mask Design is now registered, Reg. No. VA 2-520-552, and binding Ninth Circuit authority holds that a precondition to suit satisfied after filing is cured by supplemental pleading rather than by dismissal and refiling. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043–45 (9th Cir. 2015) (citing *Mathews v. Diaz*, 426 U.S. 67, 75 (1976)).

Properly confined to the four corners of the Complaint and the inferences it reasonably supports, the Motion should be denied. To the extent the Court finds any pleading deficiency, Plaintiffs request an opportunity to cure it through an appropriate amended or supplemental pleading under Rule 15.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court may take judicial notice of the truth of allegations in Plaintiffs' pleading in a separate state-court action and use them to "contradict" the well-pleaded allegations here.
2. Whether Count I should be dismissed under 17 U.S.C. § 411(a) when the Copyright Office has now registered the Mask Design.

3. Whether the running of the Copyright Act's three-year limitations period is apparent on the face of a Complaint that pleads delayed discovery, equitable estoppel, and continuing distribution.

4. Whether the Complaint pleads an express or implied license that bars the copyright and Lanham Act claims as a matter of law.

5. Whether the Complaint plausibly alleges likelihood of confusion as to sponsorship or endorsement, and whether nominative fair use and laches can be resolved on the pleadings.

6. Whether Counts V–VII are preempted, adequately pleaded, and time-barred on the face of the Complaint.

7. Whether Count VIII (declaratory relief) and leave to amend should be denied.

## STATEMENT OF FACTS

The Complaint alleges a decade-long relationship in which Sony Interactive Entertainment LLC ("SIE") paid for ESC-Toy Ltd.'s ("ESC") creative services under a 2009 Consulting Agreement and its Statements of Work, and licensed ESC to sell scheduled physical merchandise under a Merchandise License Agreement ("MLA"). Compl. ¶¶ 20–24. The Consulting Agreement — the only instrument that ever designated ESC's work as "work made for hire" — expired in 2012. *Id.* ¶¶ 4, 22.

In 2016–2017, Defendants engaged ESC to design a vinyl mask of Nathan Drake. *Id.* ¶ 25. No written agreement, statement of work, license, or work-for-hire instrument was executed. *Id.* ESC created and delivered the Mask Design; Defendants converted it into digital downloadable content ("DLC") and distributed it through the PlayStation Store and PlayStation Plus to an audience of approximately 37 million users, marketing it under Plaintiffs' own name and federally registered ESC-TOY logo. *Id.* ¶¶ 26–27. ESC — not Defendants — paid to print 5,000 promotional voucher cards. *Id.* ¶ 27. SIE's in-house counsel confirmed in writing that "no money is changing hands." *Id.* ¶ 28. Defendants paid Plaintiffs nothing. *Id.* The Complaint alleges that this use was outside the MLA and outside

any other agreement, and was undertaken "without license, assignment, or authorization." *Id.* ¶ 30.

Beginning October 31, 2017, SIE's licensing director introduced Mr. Chatel to SIE's Director of Worldwide Studios Creative for a project the director himself called "out-of-scope for our licensing program." *Id.* ¶ 31. SIE requested a formal proposal; ESC delivered a written PSN Digital Avatar System proposal on November 3, 2017, and presented a working prototype to SIE executives in Las Vegas on February 20, 2018. *Id.* ¶¶ 32–35. SIE acknowledged the proposal was "very similar to ideas we have been bouncing around," continued to accept materials, then ended the dialogue in September 2018. *Id.* ¶¶ 36–37. On July 14, 2022, SIE launched PlayStation Stars, which the Complaint alleges incorporated the solicited concept. *Id.* ¶¶ 38–40.

The Complaint pleads with specificity why Plaintiffs did not and could not reasonably have discovered their claims earlier: Defendants solicited the DLC work inside a live licensing relationship, administered it through SIE's legal department, framed it in writing as a mutual collaboration, never repudiated Plaintiffs' ownership, and never disclosed that no instrument licensed the digital exploitation. *Id.* ¶¶ 41–42. From 2019 forward Plaintiffs retained litigation counsel and delivered their complete files; those attorneys never advised Plaintiffs of the claims pleaded here. *Id.* ¶ 43. Plaintiffs first assembled the operative facts in September 2025, in a professional-negligence action against those attorneys. *Id.* ¶¶ 4, 44. The Complaint pleads delayed discovery, equitable estoppel and tolling, and separate accrual for each reproduction and distribution of the DLC. *Id.* ¶¶ 45–46.

The Copyright Office has now registered the Mask Design: Registration No. VA 2-520-552, "ESC-TOY Nathan Drake Vinyl Mask Design," effective date of registration July 10, 2026 — three days before this action was filed — and registration decision dated September 10, 2026. Declaration of Erick Chatel ("Chatel Decl.") Ex. 1. The certificate identifies Mr. Chatel as author and claimant, states the work is not a work made for hire,

and limits the claim to Plaintiffs' new material, excluding the preexisting Nathan Drake character. *Id.*

The individuals and the relationship at issue are the same ones before this Court in *Sony I*. The DLC engagement was coordinated by Naughty Dog's Nancy Cantu and administered by SIE's in-house counsel Jana MacDougall (Compl. ¶¶ 9, 28, 41); the PlayStation Stars solicitation was brokered by SIE's Senior Director of Licensed Merchandise, Brian Miller (*id.* ¶ 31); and during the same 2016–2018 window SIE solicited Plaintiffs' PlayStation Pin Program concept — the subject of *Sony I* — without compensation (*id.* ¶ 47). The Court has already held that the parties' non-written relationship is governed by Nevada law. *Sony I*, Dkt. 164 at 4–5; Compl. ¶ 67.

## LEGAL STANDARD

On a Rule 12(b)(6) motion the Court accepts the Complaint's factual allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim may be dismissed on the basis of an affirmative defense — limitations, license, laches, estoppel — "only when the running of the statute is apparent on the face of the complaint," *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)), or, in Defendants' own formulation, where there is an "obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Defendants bear the burden on each of those defenses.

## ARGUMENT

### I. THE REQUEST FOR JUDICIAL NOTICE CANNOT BE USED TO CONTRADICT THE COMPLAINT.

Defendants' Motion is built on the premise that ESC "admit[ted]" in its malpractice pleading that every claim in this action is time-barred. Mot. at 6, 8 n.5, 20. The Court should decline to notice RJN Exhibit A for that purpose, and Plaintiffs object to it under Civil L.R. 7-3(a).

A court may notice the existence of another court's filings, but it "cannot take judicial notice of the disputed facts contained in such public records." *Khoja*, 899 F.3d at 999. Nor may a defendant use incorporation-by-reference or judicial notice to insert "a defense to the well-pleaded allegations in the complaint," which is "nothing more than another way of disputing the factual allegations in the complaint." *Id.* at 1002–03. The Ninth Circuit warned specifically against "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint." *Id.* at 998. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014), on which Defendants rely, concerned documents attached to the plaintiff's own complaint, not allegations in a different lawsuit.

The passage Defendants quote — RJN Ex. A ¶ 50 — is not a fact at all. It is a legal conclusion ("lapsed under applicable statutes of limitations") that a malpractice plaintiff is required to plead as part of the "case within a case," and it names categories of claims, not accrual dates. Whether any particular claim in fact lapsed is precisely the contested legal question Defendants ask this Court to decide; it cannot be "noticed." Nor is there any inconsistency to exploit. A party may plead claims and theories "alternatively or hypothetically," and "regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3). To the extent any portion of Plaintiffs' claims is held untimely here, the loss falls on former counsel; to the extent the claims are timely, the malpractice damages shrink accordingly. The two pleadings are complementary, not contradictory. And judicial estoppel — the only doctrine that could give Exhibit A preclusive force — requires that a court have "accepted" the earlier position. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). None has.

The same analysis disposes of ESC's discovery responses in that malpractice action, which SIE's counsel in the related action recently placed on this Court's docket. *Sony I*, Dkt. 555-2 at 7–8 (ESC's Nov. 24, 2025 supplemental interrogatory responses). Those responses identify, as claims that former counsel allowed to lapse, three specific Nevada *tort* theories concerning PlayStation Stars — trade-secret misappropriation under NRS Chapter 600A, conversion, and fraud, each governed by a three-year period, NRS

11.190(3) — and unpaid-work restitution theories concerning the DLC. The Complaint here pleads none of those claims. It pleads breach of an implied-in-fact contract and quantum meruit, which carry a four-year period under NRS 11.190(2)(c), and federal copyright and Lanham Act claims that the responses do not mention at all. A statement that certain claims lapsed is not a statement that different claims, with different limitations periods, lapsed too. And in any event the responses are a litigant's contentions in another proceeding, pleaded in the alternative as Rule 8(d) permits, which no court has adopted; they are not facts the Court may notice for their truth. *Khoja*, 899 F.3d at 999–1003.

RJN Exhibits B and C are a different matter. Plaintiffs do not object to notice of the Court's own order in *ESC-Toy Ltd. v. SIE*, No. 3:21-cv-00778-EMC, Dkt. 164 ("*Sony I*"), which they cite (Compl. ¶ 67), or of the existence of the *Sony I* complaint — although, as shown below, Exhibit B helps Plaintiffs, not Defendants.

**II. COUNT I IS NOT BARRED BY SECTION 411(a).**

Defendants' lead argument is that Count I must be dismissed "without leave to amend" because the Mask Design "is not registered." Mot. at 7. It is now registered. Chatel Decl. Ex. 1. The only question is whether the Court should dismiss a claim the Complaint itself said would be amended "upon issuance," Compl. ¶ 49, and force Plaintiffs to refile it the next day. It should not.

Section 411(a) is a non-jurisdictional claim-processing rule. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 163–66 (2010). *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019), held only that "registration . . . has been made" when the Register acts on an application; it did not address whether a plaintiff whose registration issues during the litigation must start over. The Ninth Circuit has answered the analogous question. In *Northstar*, the plaintiff lacked Article III standing when it filed; it later obtained an assignment and pleaded it in a supplemental complaint under Rule 15(d). The court held that Rule 15(d) "permits a supplemental pleading to correct a defective complaint," that the time-of-filing rule "does not extend to supplemental pleadings filed pursuant to Fed. R. Civ. P. 15(d)," and that "[a] rule that would turn on the label attached

to a pleading is difficult for us to accept" — relying on *Mathews v. Diaz*, where the Supreme Court held that a statutory precondition to suit satisfied after the complaint was filed could be cured by supplemental pleading, which "would have eliminated this jurisdictional issue." 779 F.3d at 1043–45 (quoting 426 U.S. at 75). If a supplemental pleading cures a jurisdictional defect, it cures a non-jurisdictional one *a fortiori*.

The district-court decisions Defendants cite, *UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019), and *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228 (N.D. Cal. June 4, 2019), are not binding, did not discuss *Northstar* or *Mathews*, and in *Izmo* the application was still pending when the court ruled. Mot. at 7. Other courts have permitted amendment to add registrations issued after filing. *See Lang Van, Inc. v. VNG Corp.*, No. SACV 14-00100 AG (C.D. Cal. July 12, 2019). More fundamentally, Defendants identify no purpose served by dismissal. The concern animating *Fourth Estate* — that plaintiffs not sue before the Register has acted — is fully vindicated; the Register has acted. Dismissal without prejudice followed by immediate refiling would waste the parties' and the Court's resources and alter nothing. Rule 15(d) exists to avoid "the needless formality and expense of instituting a new action." *Northstar*, 779 F.3d at 1043.

To the extent an amended or supplemental pleading is necessary to place the registration before the Court, Plaintiffs request leave to do so under Rule 15. Count I should not be dismissed on this ground.

## III. THE RUNNING OF THE COPYRIGHT LIMITATIONS PERIOD IS NOT APPARENT ON THE FACE OF THE COMPLAINT.

### A. The Complaint pleads facts supporting delayed discovery.

In this Circuit a copyright claim accrues "when a party discovers, or reasonably should have discovered, the alleged infringement." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019); *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1242–44 (9th Cir. 2022). The Supreme Court has left that rule intact. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 371–73 (2024). And under

*Nealy*, a plaintiff with a timely claim under the discovery rule recovers damages for infringing acts "no matter when" they occurred. *Id.* at 371, 373–75.

Defendants' argument collapses two different things: knowledge that the DLC existed, and knowledge that its distribution was unauthorized. The discovery rule asks when the plaintiff knew or should have known of the *infringement* — the violation of its rights — not merely of the defendant's conduct. The Complaint alleges that Plaintiffs knew the DLC was being distributed, but reasonably believed — because Defendants solicited the work inside a live licensing relationship, administered it through SIE's legal department, framed it as mutual promotion, and never repudiated Plaintiffs' ownership — that the use was authorized within that relationship. Compl. ¶¶ 41–42. The operative fact that converted known conduct into a known wrong — that no instrument covered the digital exploitation because the only work-for-hire instrument had expired years earlier — was not assembled until September 2025. *Id.* ¶¶ 4, 44.

Defendants respond that "the discovery rule applies to the discovery of facts, not a legal theory," Mot. at 9, but whether a license existed is a fact, and the Complaint alleges Defendants' own conduct created the belief that one did. Whether that belief was reasonable, and when a reasonably diligent copyright owner in Plaintiffs' position would have been on inquiry notice, is a question of fact not resolvable on the pleadings. *See Von Saher*, 592 F.3d at 969. Defendants' reliance on *Sony I* ¶ 47 (RJN Ex. B) is misplaced: that paragraph describes ESC — not SIE — as "the exclusive vendor and distributor of the Uncharted 4 vinyl figure and downloadable content, without executing a written agreement." It confirms the absence of any writing; it says nothing about a grant of rights from ESC to Defendants.

**B. Each distribution is a separately accruing act.**

Independently, "each infringing act starts a new limitations period." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 671 (2014). The Complaint alleges that "[e]very distribution of the DLC embodying the Mask Design was a reproduction and distribution of Plaintiffs' copyrighted work," Compl. ¶ 26, and that "each reproduction and

distribution of the DLC" begins its own limitations period, id. ¶ 46. Defendants' assertion that "[t]hese events ended by 2017," Mot. at 20, is a factual contention found nowhere in the Complaint; it is Defendants' characterization, and on this motion the Complaint controls. To the extent any infringing reproduction or distribution occurred on or after July 13, 2023, such acts would fall within the three-year period under the injury rule Defendants themselves prefer, Mot. at 9 n.6, without regard to discovery.

**C. Equitable estoppel is pleaded and is fact-bound.**

Finally, the Complaint pleads that Defendants' own conduct — soliciting the work inside a licensed relationship, administering the arrangement through counsel, and framing it in writing as a mutual no-payment collaboration — induced Plaintiffs' belief that the use was authorized and concealed the claims' factual basis. Compl. ¶ 46. Equitable estoppel and tolling turn on the parties' conduct and intent and cannot be resolved against the plaintiff at the pleading stage.

**IV. THE COMPLAINT DOES NOT PLEAD A LICENSE THAT BARS THE FEDERAL CLAIMS.**

License is an affirmative defense on which Defendants bear the burden. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000). Defendants may prevail on it under Rule 12(b)(6) only if the Complaint "admit[s] all the ingredients of an impenetrable defense." Mot. at 11. It does not.

**A. No express license is pleaded.**

The Complaint alleges the opposite: that Defendants' use "was outside the scope of the MLA and outside the scope of any other agreement between the parties, and was undertaken without license, assignment, or authorization." Compl. ¶ 30; *see also id.* ¶¶ 25, 49, 60. Defendants treat the allegation that they "engaged ESC to design a vinyl mask . . . for exploitation as downloadable content," *id.* ¶ 25, as a pleaded grant of rights. It is a description of what Defendants asked for, not of what ESC agreed to give. A request to create a work is the first element of an implied license, not an express one, and the Complaint expressly alleges that "no . . . license . . . was executed." *Id.* ¶ 25. Defendants'

footnote 7 asks the Court to "disregard" that allegation as "conclusory," but an allegation that no license was granted is a factual allegation, and the authority Defendants cite for ignoring it is an unpublished Central District mortgage decision.

**B. The implied-license elements are not established on the face of the Complaint.**

An implied nonexclusive license arises only where "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008). The third element — the licensor's objective intent at the time of creation and delivery, as manifested by the parties' conduct — is a question of fact. *Id.* at 756. Both *Asset Marketing* and *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990), were decided on summary-judgment records, and in both the licensee had paid for the work. That payment was central: a nonexclusive license "supported by consideration is a contract" and may be irrevocable, but a license not supported by consideration is revocable. *Asset Mktg.*, 542 F.3d at 757; *Lulirama Ltd. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 882 (5th Cir. 1997).

Here the Complaint alleges that Defendants paid nothing, that ESC bore the out-of-pocket costs, and that ESC understood the digital exploitation to sit within a royalty-bearing licensing relationship. Compl. ¶¶ 27–28, 41–42. Three consequences follow. First, whatever ESC intended, it did not intend to confer a gratuitous, unlimited right to reproduce and distribute its work to 37 million users for nothing; the scope of any implied license is limited by the licensor's intent, and intent is for the factfinder. Second, any permission that could be implied was conditioned on the compensation structure of the relationship within which it was given; use outside that condition is infringement, not breach. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121–22 (9th Cir. 1999) (distinguishing conditions from covenants). Third, even an unconditional gratuitous license would be revocable, and the Complaint alleges Defendants have never acknowledged any

limit on their rights. *Id.* ¶ 80. None of this can be resolved against Plaintiffs on a motion to dismiss. The district-court decisions Defendants cite (Mot. at 11) involved complaints that affirmatively pleaded payment or agreement to the challenged use; this one pleads neither.

**C. The same analysis defeats the trademark "license" argument.**

Defendants' Lanham Act license theory depends entirely on the same "oral engagement." Mot. at 11–12. The Complaint alleges that the only trademark license between the parties — the MLA — authorized scheduled physical merchandise through defined channels and that no agreement authorized use of the ESC Marks in digital DLC distributed through the PlayStation Store. Compl. ¶ 60. Whether Plaintiffs' participation in creator credit for a product they believed to be licensed amounts to consent to use their registered logo on promotional materials for a product that was not licensed is a question of fact.

## V. THE LANHAM ACT CLAIMS ARE ADEQUATELY PLEADED.

**A. Likelihood of confusion is pleaded with facts, not labels.**

Likelihood of confusion is "intensely factual," and even summary judgment "is generally disfavored in the trademark arena." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). Dismissal on the pleadings is rarer still. The Complaint does not merely recite the element. It alleges that Defendants marketed the DLC as the "Erick Scarecrow Nathan Drake Vinyl Mask" and affixed the registered ESC-TOY logo to promotional and voucher materials, Compl. ¶¶ 27, 59, and that doing so conveyed to approximately 37 million consumers that Plaintiffs "endorsed, authorized, and were commercially associated with (and, by industry custom, compensated for) the DLC, when Plaintiffs were not compensated and did not authorize the digital exploitation." *Id.* ¶ 64. That is a specific theory of confusion as to sponsorship and approval — the type of confusion § 1125(a)(1)(A) names — supported by who, what, how, and how many.

**B. Nominative fair use cannot be resolved on the pleadings and fails on its own terms.**

Nominative fair use applies only where the defendant uses "only so much of the mark . . . as is reasonably necessary" and does "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175–76 (9th Cir. 2010). The Complaint alleges Defendants used not merely Plaintiffs' name but their registered design logo on promotional materials — use of a "distinctive lettering" or logo exceeds what is reasonably necessary to identify a source. *New Kids*, 971 F.2d at 308 n.7. And the Complaint alleges exactly the harm the third factor guards against: a false message of endorsement and commercial association. Compl. ¶ 64. Defendants' answer is that Plaintiffs "coordinated regarding creator credit," Mot. at 13, but the Complaint alleges that coordination occurred under an induced belief that the product was licensed, Compl. ¶¶ 41–42; what a plaintiff would have agreed to had it known the truth is a question of fact. *Tabari* itself was decided after a bench trial, 610 F.3d at 1174, not on a motion to dismiss.

## VI. LACHES CANNOT BE RESOLVED ON THE PLEADINGS.

Laches requires unreasonable delay and prejudice, and delay is measured from the time the plaintiff "knew or should have known about its potential cause of action." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). The Complaint alleges Plaintiffs did not know and could not reasonably have known until September 2025. Compl. ¶¶ 41–44. Taking that as true, suit was filed within a year of discovery and no presumption of laches arises. *Jarrow* and *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015 (9th Cir. 2018), were decided on full trial records; Defendants cite no Ninth Circuit decision affirming a laches dismissal under Rule 12(b)(6) over pleaded allegations of delayed discovery.

Defendants' walk through the *E-Systems* factors (Mot. at 14) only confirms the point: each factor is argued from Defendants' characterization of the facts, and "prejudice"

is asserted by counsel rather than pleaded. Nor is laches available to a willful infringer. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956–57 (9th Cir. 2001). The Complaint alleges willful infringement, Compl. ¶ 60, and alleges that Defendants knew no instrument authorized the digital use because SIE's own counsel administered the arrangement. *Id.* ¶ 41. Finally, to the extent Defendants invoke laches against the copyright claims (Mot. at 8 n.4), *Petrella* forecloses it: laches "cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window." 572 U.S. at 667.

Prejudice is also absent. The Ninth Circuit recognizes two forms — evidentiary prejudice (lost documents, faded memories) and expectations-based prejudice. *Danjaq*, 263 F.3d at 955. Defendants assert both from counsel's table, Mot. at 14, but the Court may take judicial notice of its own docket: SIE has been in continuous litigation with ESC before this Court over this same relationship since early 2021, *ESC-Toy Ltd. v. SIE*, No. 3:21-cv-00778-EMC, Dkt. 1, with the same personnel as witnesses, under a litigation hold, and the Court has ordered the parties' merchandise agreements and related correspondence produced to all parties in that action. *Id.*, Dkt. 546 ¶ 3. A defendant that has spent five years preserving and producing the documents and deposing the witnesses concerning this relationship cannot credibly claim that evidence has been lost or memories have faded. Nor may a party invoke laches — an equitable defense — where its own conduct induced the delay; the Complaint alleges that Defendants' framing of the DLC as a mutual collaboration inside a licensed relationship, administered by SIE's own counsel, is what induced Plaintiffs' belief that the use was authorized. Compl. ¶¶ 41–42, 46.

**VII. THE STATE-LAW CLAIMS SHOULD NOT BE DISMISSED.**

**A. Counts V–VII are not preempted.**

*Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011) (en banc), is dispositive of the implied-contract claim. The en banc court held that a *Desny* claim for breach of an implied-in-fact contract to pay for the use of a submitted idea is not preempted because the promise to pay is an "extra element" that makes the claim "qualitatively different" from a copyright claim, *id.* at 980–81; it so held on the pleadings, reversing a

Rule 12(b)(6) dismissal, as the court had in *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967–68 (9th Cir. 2004). The Complaint alleges precisely that bilateral expectation. Compl. ¶¶ 68–69. Defendants' only response is that the expectation is implausibly pleaded (Mot. at 15–16) — which is a Rule 8 argument, addressed below, not a preemption argument. A claim that pleads the extra element is not preempted; whether it is proved is for later.

The unjust enrichment/quantum meruit claim likewise survives. The benefits pleaded in Count VI are (a) design and development services rendered at Defendants' request; (b) out-of-pocket voucher-card printing costs Plaintiffs advanced; (c) the endorsement value of Plaintiffs' names and registered marks; and (d) the PlayStation Stars proposal and prototype work. Compl. ¶ 72. Services, money advanced, and trademark goodwill are not "works of authorship" within the subject matter of copyright, 17 U.S.C. §§ 102, 301(a), and a claim to be paid for them is not "equivalent" to any exclusive right under § 106. *Montz*, 649 F.3d at 980 ("the bargain is not for the idea itself, but for the services of conveying that idea") (quoting *Grosso*, 383 F.3d at 967). *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956 (N.D. Cal. 2024), and *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023), involved unjust-enrichment theories pleaded solely as unauthorized reproduction of the plaintiffs' works; neither involved services, advanced costs, trademarks, or a solicited submission with an expectation of payment.

The implied-covenant claim rises or falls with the implied contract; because the contract claim is not preempted, neither is the covenant claim. *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1112 (9th Cir. 1999), holds only that a covenant claim derived from a preempted contract claim is preempted. Nor is the covenant claim "superfluous." Under Nevada law, which this Court has held governs the parties' non-written contractual relations, *Sony I*, Dkt. 164 at 4–5; Compl. ¶ 67, the covenant is implied in every contract and is breached where a party performs in a manner unfaithful to the contract's purpose. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). Count VII alleges conduct beyond non-payment — soliciting the concept while internally developing the same space and stringing Plaintiffs

along. Compl. ¶ 77. Plaintiffs acknowledge that the tort form of the covenant claim requires a special relationship, *id.* at 923 n.4, and plead one (Compl. ¶ 77); if the Court disagrees, the contract form of the claim remains.

**B. Counts V–VII are adequately pleaded.**

Nevada law governs formation. *Sony I*, Dkt. 164 at 4–5. Under Nevada law an implied-in-fact contract is "manifested by conduct," and quantum meruit lies where services are rendered under circumstances in which both parties understood payment was expected, or where the defendant has retained a benefit it would be inequitable to keep without payment. *Certified Fire Prot. Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 283 P.3d 250, 255–57 (2012). California law is not materially different for present purposes: where an idea is submitted at the recipient's request under circumstances in which the recipient knows it is offered for sale, acceptance of the disclosure implies a promise to pay. *Desny v. Wilder*, 46 Cal. 2d 715, 738–39 (1956); *Grosso*, 383 F.3d at 967.

The Complaint pleads solicitation, request, acceptance, and course of dealing — the circumstances from which assent is implied. SIE's licensing director brokered the introduction and told Mr. Chatel the project was "out-of-scope for our licensing program"; SIE's creative director said the project was "right up your street," requested a formal proposal, received it, received a prototype presented in person to SIE executives, acknowledged it was "very similar to ideas we have been bouncing around," and continued accepting follow-up work without disclosing any intention not to pay. Compl. ¶¶ 31–37. This occurred inside a decade-long relationship in which SIE had always paid for ESC's creative services. *Id.* ¶¶ 20–21, 68. That is the opposite of *Daniels v. Walt Disney Co.*, 958 F.3d 767, 774 (9th Cir. 2020), where the plaintiff pitched unsolicited and alleged no request, and of *Aton Center*, where the issue was a payor's "unexpressed intention." Defendants' observation that SIE's prior paid engagements were in writing (Mot. at 16) cuts the other way: it shows SIE understood ESC's creative work was compensated work, and it was SIE that chose to solicit this work "out-of-scope" of the written framework.

Whether the parties' conduct manifested a mutual expectation of compensation is a question of fact.

As to the DLC, Defendants' reliance on the statement that "no money is changing hands," Compl. ¶ 28, misreads the pleading. The Complaint alleges that statement was accurate only as to Plaintiffs — Defendants paid nothing — while Defendants captured the full promotional and goodwill value of the work, *id.*; that ESC understood the arrangement as reciprocal promotion within a royalty-bearing licensing relationship, *id.* ¶¶ 41–42; and that SIE had always paid for ESC's services, *id.* ¶ 68. An expectation of compensation may take the form of reciprocal benefit rather than cash. *Montz*, 649 F.3d at 981 (partnership interest; "a piece of the action"). Under Nevada law, restitution does not require a promise at all — only a benefit retained under circumstances making non-payment inequitable. *Certified Fire*, 283 P.3d at 257. A benefit conferred on 37 million users for nothing, on the strength of a relationship the defendant controlled, is such a circumstance.

**C. The state-law claims are not time-barred on the face of the Complaint.**

*1. The PlayStation Stars claims are timely under Nevada law, and the choice-of-law question cannot be decided against Plaintiffs on this record.* The Complaint pleads that the implied contract was breached no earlier than July 14, 2022 and that the claims are timely under NRS 11.190(2)(c). Compl. ¶¶ 69, 73. Defendants concede the claims are timely under Nevada law. Mot. at 21–22. Their argument is that California's two-year statute applies instead.

Defendants' "false conflict" analysis is wrong at step two. Governmental-interest analysis asks whether each State has an interest in having its *substantive* policy applied; it does not ask what the other State's *choice-of-law* rule would select. Nevada's lex fori rule for limitations (Mot. at 22) is a choice-of-law rule, not a disclaimer of interest; Nevada's interest is expressed in NRS 11.190(2)(c) itself — a legislative judgment that Nevada residents have four years to sue on obligations not founded on a writing. The California Supreme Court in *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91–98 (2010), treated the other State's limitations statute as embodying that State's interest in regulating conduct

and relationships connected to it, and applied it. There is a true conflict here, and it must be resolved at step three by comparative impairment — a fact-dependent weighing that Defendants ask the Court to perform on counsel's characterization of where things "occurred." The Complaint alleges that ESC developed the proposal and prototype at its Las Vegas principal place of business and presented the prototype to SIE executives in Las Vegas, where the implied contract was formed by SIE's acceptance. Compl. ¶¶ 35, 67. This Court has already held, on the same relationship, that the place of ESC's performance is Nevada and that Nevada law governs. *Sony I*, Dkt. 164 at 4–5. Plaintiffs do not contend § 1646 selects the limitations period; they contend that the Court's finding of where the parties' relationship is centered bears directly on which State's interest would be more impaired. Those are the "exceptional circumstances" that Restatement (Second) of Conflict of Laws § 142 contemplates, *Deutsch v. Turner Corp.*, 324 F.3d 692, 716–17 (9th Cir. 2003): a Nevada plaintiff, performing in Nevada, under a relationship this Court has held is governed by Nevada law, with a claim the forum concedes is timely under Nevada law. At minimum, the question cannot be resolved against Plaintiffs on a motion to dismiss.

*2. Even under California law, the claims are not barred on the face of the Complaint.* California applies continuous accrual where an obligation is recurring: each breach triggers its own limitations period, and claims for breaches within the period survive even if earlier ones are barred. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199–1201 (2013). An implied obligation to pay for the use of a submitted concept is breached anew with each period of unpaid exploitation; PlayStation Stars has operated continuously since July 2022 and, the Complaint alleges, was materially restructured in August 2024. Compl. ¶¶ 38–40. Exploitation from July 2024 forward is within even the two-year period. Separately, California applies the discovery rule to contract claims where the breach is committed in secret and the harm is not reasonably discoverable, *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983); *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 4–6 (2003), and whether a plaintiff reasonably should have discovered a breach is a question of fact.

*3. The DLC-related restitution and covenant theories.* The DLC theories in Counts VI and VII are pleaded as timely from Plaintiffs' September 2025 discovery. Compl. ¶ 73. Nevada measures accrual of a contract claim from when the claimant "knew or should have known of facts constituting" the breach, *Soper ex rel. Soper v. Means*, 111 Nev. 1403, 1406, 903 P.2d 222, 224 (1995), and the Complaint pleads equitable estoppel based on Defendants' conduct. Compl. ¶ 46. Nevada also recognizes equitable tolling, weighing the plaintiff's diligence and knowledge of the relevant facts, deception or false assurances by the opposing party, prejudice to the opposing party, and other equitable circumstances. *Fausto v. Sanchez-Flores*, 137 Nev. 113, 482 P.3d 677, 681–82 (2021) (adopting the factors of *Copeland v. Desert Inn Hotel & Casino*, 99 Nev. 823, 673 P.2d 490 (1983)). The Complaint pleads diligence (retention of counsel and delivery of the complete file from 2019, ¶ 43), Defendants' assurances (¶¶ 28, 41–42), and the absence of prejudice to a defendant that has litigated this relationship before this Court since 2021. Plaintiffs acknowledge these theories present the closest limitations question in the case and that Defendants' argument has force as to a restitution claim for services rendered in 2017. But the facts bearing on accrual — when Defendants' retention of the benefit became inequitable, whether Defendants' continued distribution of the DLC constitutes continuing retention of the benefit, and whether Defendants' conduct estops them — are not established on the face of the Complaint.

**VIII. THE DECLARATORY-RELIEF CLAIM STANDS.**

Defendants' sole argument is that Count VIII falls with the other claims. Mot. at 24. Because the other claims survive, so does Count VIII. It also states an independent controversy: Defendants' exploitation of the Mask Design and the PlayStation Stars materials "as their own without license or payment — asserts, at least implicitly, ownership or unrestricted rights that Plaintiffs dispute." Compl. ¶ 80. Defendants' Motion confirms the dispute is real: it asserts that Defendants hold an "actual — or, at minimum, implied — license." Mot. at 9.

**IX. ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND.**

Leave to amend is granted with "extreme liberality," Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003), and denied only where "the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). Defendants' futility argument (Mot. at 24–25) assumes the correctness of their limitations arguments and nothing more. The registration has issued, and any pleading deficiencies concerning the registration, the parties' course of dealing, or Plaintiffs' discovery may be addressed through an appropriate amended or supplemental pleading. Dismissal with prejudice would be unwarranted.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety and deny the Request for Judicial Notice as to Exhibit A to the extent it is offered for the truth of its contents. In the alternative, any dismissal should be without prejudice and with leave to amend.

Dated: October 29, 2026

LAW OFFICES OF PAUL J. STEINER

SOMMERS LAW PC

By: /s/ Paul J. Steiner
Paul J. Steiner
Frank F. Sommers
Attorneys for Plaintiffs
ESC-TOY LTD. and ERICK CHATEL